**KNOXVILLE ROD AND BEARING, INC., Plaintiff-Appellant,**

v.

**BETTIS CORPORATION OF KNOXVILLE, INC., Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Nov. 15, 1983.

Application for Permission to Appeal Denied March 12, 1984.

Donald K. Vowell, Rainwater, Humble & Vowell, Knoxville, for plaintiff-appellant.

William Barton Kaserman, Knoxville, for defendant-appellee.

CRAWFORD, Judge.

Plaintiff, Knoxville Rod and Bearing Company, Inc., appeals from a judgment of dismissal by the Chancellor in a trial without the intervention of a jury.

Suit was filed against defendant, Bettis Corporation of Knoxville, Inc.,[1] seeking to enjoin defendant from further violating the noncompetition clause of a contract and money damages for the breach of the covenant.

Plaintiff and defendant were both engaged in business which included, among other things, wholesale tire distribution. Defendant apparently decided to discontinue this phase of its operation, and by a contract entitled "Agreement for the Sale of Assets" agreed to sell and plaintiff agreed to buy all of the inventory (tires, wheels, tubes, etc.), equipment, franchise rights and accounts receivable. This contract signed December 6, 1979, and completely executed in February of 1980 expressed a covenant not to compete:

4.01 Seller hereby covenants that it will not, for a period of five (5) years from the date of Closing, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be connected in any manner with the sale of wheels, tires, and tubes within a radius of fifty (50) miles from the boundary of Knoxville, Knox County, Tennessee, as the same presently exists. The parties agree that the remedy at law for any breach of the foregoing will be inadequate, and that Purchaser shall be entitled to injunctive relief. . . .

The other provisions of the contract pertinent to this decision are:

6.01 *Amendment and mutual termination.* This agreement may be amended or terminated only in writing and by mutual agfeement [sic] of the parties hereto.

9.02 *Whole agreement, no oral modifications.* This agreement embodies all representations warranties and agreements of the parties hereto, and may not be altered or modified except by an instrument in writing signed by the parties.

Notwithstanding the covenant not to compete, plaintiff sold defendant approximately $55,000 worth of tires in 1980, and $71,000 worth of tires in 1981. It is contended by the plaintiff that these tires were sold to defendant for the purpose of defendant engaging in the business as a retail dealer in tires and not in competition with plaintiff as a wholesale distributor of tires. Plaintiff asserts that the parties discussed the purchase of the tires by the defendant and they agreed that defendant would engage in the retail business only, thus, orally modifying and amending the noncompetition clause in the written contract to that extent. Plaintiff further contends that during the time it was selling tires to the defendant it had no knowledge that the defendant was engaged in business as a wholesale tire distributor, and only learned this fact in the spring of 1981, which knowledge precipitated this action.

Defendant, on the other hand, asserts that the discussion between the parties did not rise to the dignity of a contract and had no specificity or certainty of terms necessary to formalize an amendment or modification. Defendant contends that there was no modification and that the sale of tires by the plaintiff to the defendant to engage in the tire business constituted a waiver of the covenant not to compete.

The Chancellor found that the contract was not modified as asserted by the plaintiff, and that the plaintiff in not enforcing its rights under the covenant for over two years had effectively waived those rights.

Plaintiff initially presented one issue for review: "May parties change an existing written contract verbally even though the contract provides that it may be changed only in writing?" However, in the reply brief plaintiff asserts that defendant in its brief conceded that a written contract may be changed verbally even though there is an express prohibition against such amendment and that the issues now for this court are:

---

**1.** The contract was actually between plaintiff and Bettis Corporation, predecessor of defendant, but the parties stipulated that the successor corporation is subject to the contract; therefore, all references to defendant shall also mean the contracting party.

1.  Was the contract changed verbally?
2.  Did the trial court rule that the contract was not changed at all or did it rule only that the contract was not changed in writing?

We believe the issue first presented by plaintiff is the paramount issue. The contract under which the suit was brought does not involve the sale of a business, the good will thereof, nor the sale of real estate. The major part of the assets disposed of under the contract are inventory and equipment. Neither party has cited any authority or attempted in any way to rely upon the provisions of the Uniform Commercial Code as adopted in this state. In fact, plaintiff has specifically asserted that the provisions of the UCC do not apply. The trial court apparently did not consider the UCC in making its decision.

In connection with sales, the Code applies to transactions in goods. Tenn.Code Ann. § 47–2–102 (1979). "Goods" is defined in Tenn.Code Ann. § 47–2–105(1) as:

> [A]ll things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 8 of this title) and things in action.

We have been unable to find cases from this jurisdiction involving the precise points involved in determining the applicability of the Uniform Commercial Code to the case at bar. However, there are cases from other jurisdictions touching on the determinative elements with diverse results.

*DeFilippo v. Ford Motor Company,* 516 F.2d 1313 (3d Cir.1975), *cert. denied* 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141 involved, among other things, a suit for breach of contract for the sale of an automobile dealership. The contract provided for plaintiffs to purchase the assets, less realty, of an existing dealership. In making the determination that UCC 2–201 was applicable to the contract, the court had to determine whether the contract involved a transaction in goods, UCC 2–105 (the same

as Tenn.Code Ann. § 47–2–105). In holding the UCC applicable the court said:

> (8) For the Statute of Frauds relating to the sale of goods to become applicable, we do not believe every asset subject to the sale must qualify under the "movable" test of U.C.C. § 2–105.... Rather than a view of mechanical technicality or of mathematical nicety, a view of the reasonable totality of the circumstances should control the characterization of the contract for sale. If, viewed as a whole, it can be concluded that the essential bulk of the assets to be transferred qualify as "goods," then it is appropriate to consider the transaction a "contract for the sale of goods." To insist that all assets qualify as "goods" would substantially thwart the intentions of the drafters of the Uniform Commercial Code; it would sanction the absurd. The agreement of sale and purchase could cover physical, movable assets, thus qualifying as "goods," as well as other assets—such as receivables from their particular lines—not so qualifying. But to segregate "goods" assets from "non-goods" assets, and to insist that the Statute of Frauds apply only to a portion of the contract, would be to make the contract divisible and impossible to performance within the intention of the parties.
>
> (9) We believe it preferable to utilize a rule of reasonable characterization of the transaction as a whole. Applying this rule to the facts before us and carefully examining the list of assets to be sold, we note that title to no real estate was to pass in the transaction, nor was any value assigned for good will or the value of the business as a going concern. Accordingly, we have no hesitation in agreeing with the district court's applying U.C.C. § 2–201 and its finding that the alleged contract was unenforceable *for want of the signature of Ford Motor Company.*

*Id.* at 1323.

The reasoning of the court is logical and realistic and its application to the case at bar is appropriate. We adopt the rea-

soning and hold that the contract between the parties in this case is a transaction in goods. Accordingly, we disagree with the assertion of the plaintiff and hold that this case is controlled by the Uniform Commercial Code as adopted in Tennessee.

■ We feel that plaintiff and defendant, buyer and seller respectively, come within the definition of "merchant" in Tenn.Code Ann. § 47–2–104(1) (1979):

"Merchant" means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction....

The term "between merchants" as used in the Code "means in any transaction with regard to which both parties are chargeable with the knowledge or skill of merchants." Tenn.Code Ann. § 47–2–104(3) (1979).

Consequently, Tenn.Code Ann. § 47–2–209(2) (1979) is applicable to this transaction and is quoted as follows:

A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

■ We interpret this statute to mean that as between merchants a clause in a contract prohibiting oral modification is binding without any separate signing by either party. On the other hand, if a nonmerchant is contracting with a merchant using a form supplied by the merchant containing such a clause, the non-merchant must separately sign such a provision in order to prohibit oral modification.

In the comments to the official text it is stated:

Subsection (2) permits the parties in effect to make their own Statute of Frauds as regards any future modification of the contract by giving effect to a clause in a signed agreement which expressly requires any modification to be by a signed

writing. But note that if a consumer is to be held to such a clause on a form supplied by a merchant it must be separately signed.

Thus, in *U.S. Fibres, Inc. v. Proctor & Schwartz, Inc.*, 358 F.Supp. 449 (E.D.Mich. 1972), *aff'd*, 509 F.2d 1043 (6th Cir.1973), a case involving a contract of sale between merchants which provided that all modifications must be in a signed writing, the court said:

Plaintiff claims that because of defendant's conduct and oral statements, there was a modification of the original agreement as allowed by UCC § 2–209(1). In this case, there could be no such modification. The parties have expressly provided in their written agreement that all modifications must be in signed writing. This type of provision is clearly allowed under UCC § 2–209(2).

*Id.* at 460.

We are not unmindful of the general rule established in this state by court decision that allows contracts to be orally modified even if the contracts specifically state that the contract can only be modified in writing. *See generally Co-operative Stores Co. v. United States Fidelity & Guaranty Co.*, 137 Tenn. 609, 622–623, 195 S.W. 177, 180 (1917); 17 Am.Jur.2d Contract, § 465 (1964). However, the cases establishing this rule are not in the face of an express statutory prohibition as we have in Tenn. Code Ann. § 47–2–209(2) (1979). This is clearly recognized by the legal writers as an exception to the general rule for the oral modification of a written contract which specifically provides that oral modification cannot be made. *See generally* 17 Am.Jur.2d Contracts, § 466 (1964), 17A C.J.S. Contracts, § 377(c) (1963); 6 Corbin on Contracts, § 1295 (1962), and many others.

■ The contract involved herein is a transaction in goods between merchants and is controlled by the provisions in Tenn. Code Ann. § 47–2–209(2) (1979) prohibiting oral modification. Accordingly, the con-

tract cannot be and was not modified as suggested by plaintiff.

This brings us to the defense interposed by defendant that plaintiff waived its right to enforce the covenant not to compete by its action and course of conduct. The plaintiff seems to have virtually conceded that its actions in the absence of a contract modification constitute a waiver of its rights, but if we are wrong in this assumption we will now consider such an issue.

■ For approximately two and one-half years after the contract was signed, plaintiff sold tires to defendant in a price range allowing for a reasonable mark-up to engage in the wholesale tire distribution business. It also appears that defendant was one of the three largest customers of plaintiff during this period of time. The Chancellor found that plaintiff knew or should have known that there was a continued breach of the covenant by defendant. This, in effect, is a finding that plaintiff knew or should have known that defendant was engaged in the tire business. The evidence does not preponderate against such a finding.

In *Baird v. Fidelity-Phenix Fire Ins. Co.*, 178 Tenn. 653, 162 S.W.2d 384 (1942), our Supreme Court, quoting from a Massachusetts case, stated:

"Waiver is a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such waiver, he would have enjoyed. It may be proved by express declaration; or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage; or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive."

178 Tenn. at 665, 162 S.W.2d at 389.

■ The acts or course of conduct referred to "must be clear, unequivocal and decisive acts of the party or an act which shows determination not to have the benefit intended in order to constitute a waiver." *Gitter v. Tennessee Farmers Mutual Insurance Company*, 60 Tenn.App. 698, 450 S.W.2d 780, 784 (1969). In the case at bar, the plaintiff's acts are clear and unequivocal. In selling the tires to the defendant, plaintiff knew that defendant was in the tire business and allowed him to so continue. As a result plaintiff has waived its right to enforce the covenant not to compete. The Chancellor so found, and we do not find that the evidence preponderates against this finding. *See* T.R.A.P. 13(d). The judgment of the trial court is affirmed, and the costs of the appeal are adjudged against the appellant.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.